UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

**CIVIL ACTION NO. 21-87-DLB**

**DIVERSICARE LEASING CORP., d/b/a CARTER NURSING AND
REHABILIATION CENTER; DIVERSICARE HEALTHCARE SERVICES, INC.
DIVERSICARE MANAGEMENT SERVICES CO.
ADVOCAT FINANCE, INC.
OMEGA HEALTHCARE INVESTORS, INC.
and DIVERSICARE LEASING COMPANY, II**                                                   **PLAINTIFFS**

v.                                            <u>**MEMORANDUM OPINION AND ORDER**</u>

**TONYA EDEN, as Administratrix of the
ESTATE OF MARK ALLEN EDEN**                                                              **DEFENDANT**

\*\*\* \*\*\* \*\*\* \*\*\*

## I.     INTRODUCTION

This matter is before the Court upon Plaintiffs' Motion to Compel Arbitration and Enjoin Defendant (Doc. # 6) and Defendant's Motions to Dismiss (Doc. # 10 and 23). The motions have been fully briefed by the parties and for the reasons set forth herein, the Court finds that no agreement to arbitrate exists and, therefore, this matter will be dismissed.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This case arises from Mark Allen Eden's residency at Carter Nursing and Rehabilitation, LLC in Grayson, Kentucky, from March 31, 2017, until December 31, 2019. As part of the admissions process, Mr. Eden was presented with certain documents, including an "Addendum to Admission Agreement (OPTIONAL) Arbitration Agreement". (Doc. # 1-1). This agreement requires the arbitration of "any legal dispute, controversy,

1

demand, or claim that arises out of or relates to the Resident Admission Agreement or is in any way connected to the Resident's stay at the Facility[.]" *Id.* It also requires that "[a]ll claims based in whole or in part on the same incident, transaction, or related course or care or services provided by the Facility to the Resident…shall be arbitrated in one proceeding." *Id*.

Executing this agreement is not a requirement for admission to the facility but is, as conspicuously set forth at the top of the first page, "OPTIONAL". *Id.* Indeed, before presenting the resident or their representative with the agreement, an employee of the facility explains the nature of the agreement and its implications. (Affidavit of Tammy Stephens, Community Liaison, Marketing Director and Director of Admissions for the Carter Nursing and Rehabilitation Center, Doc. # 13-1).

The facility's employee also informs the resident or representative that they do not have to enter into the Agreement if they do not wish to and encourages them to read the Agreement in full before signing. *Id.* at ¶ 5. Further, the facility employee explains the implications of the Agreement by informing the resident or representative that by agreeing to its terms, they are agreeing not to go before a jury in court for resolution of disputes, but rather outside of court with an arbitrator. *Id.*

In an Affidavit, executed on January 11, 2022, and submitted to the Court as an attachment to Plaintiffs' response to Defendant's dispositive motion, Ms. Stephens states that she recalls presenting the arbitration agreement to Mr. Eden on March 17, 2017. *Id.* at ¶ 8. She confirmed that "he was alert, oriented" and able to sign his own admissions paperwork. *Id.* at ¶ 9. She does not, however, state that Mr. Eden did not fully execute the agreement. Indeed, she does not mention where Mr. Eden affixed, and, more

2

importantly, did not affix, his signature.  Instead, her affidavit focuses on his whether or not he understood the admissions process. *Id.*   In the final paragraph, Ms. Stephens states "[b]ecause I allowed Mr. Eden to sign the paperwork, I am certain he would have been engaging in the admission in such a way that indicated he understood what he was signing." *Id.* at ¶ 1.

The last page of the agreement has three separate signature lines – two for the resident or representative one for the facility's representative.  The first signature line follows this paragraph:

> By signing as the Resident's Representative, I acknowledge that I am either the Resident's court appointed guardian, attorney-in-fact with authority to execute this Arbitration Agreement, or I have been expressly and fully authorized by the Resident to execute this Arbitration Agreement.

(Doc. 1-1, p. 5).

Mr. Eden signed on the line directly below for "Resident / Representative Signature".

The next signature portion follows this paragraph, **"I hereby acknowledge that I have read and/or been given the opportunity to read this Arbitration Agreement and consent to the terms herein."** *Id.*(emphasis added).  The signature line directly beneath this language is blank.  Mr. Eden did not sign it.  The third signature section was signed by Ms. Stephens on behalf of the facility. *Id.*

Defendant alleges that while at Carter Nursing and Rehabilitation, Mr. Eden suffered physical and emotional injuries due to inadequate care, and his health and physical condition deteriorated and resulted in his death.

3

On November 8, 2021, Defendant filed in the Circuit Court of Carter County, Kentucky, Case No. 21-CI-00341, a negligence, medical negligence, corporate negligence, and wrongful death action against Plaintiffs in this action Diversicare Leasing Corp. d/b/a Carter Nursing and Rehabilitation Center; Diversicare Healthcare Services, Inc.; Diversicare Management Services Co.; Advocat Finance, Inc.; Omega Healthcare Investors, Inc.; Diversicare Leasing Company II, LLC as well as Carter Nursing and Rehabilitation, LLC; Carter Nursing and Rehabilitation Holdings, LLC; 250 McDavid Blvd SNF Realty, LLC; 250 McDavid Blvd SNF Realty Holdings, LLC; Bluegrass Consulting Group, LLC; Bluegrass Consulting Group Holdings, LLC; Kentucky SNF Realty Holdings, LLC; Marx Development Group, LLC; MDG Majestic Property Holdings, LLC; MDG Majestic Operations Holdings, LLC; Majestic Management, LLC; Boulevard Health Management, LLC; David Marx; Bernie McGuinness; Joe Brainard, in his capacity as Administrator of Carter Nursing and Rehabilitation, LLC f/k/a Carter Nursing and Rehabilitation Center. (Doc. # 1-2).

On December 15, 2021, Diversicare Leasing Corp. d/b/a Carter Nursing and Rehabilitation Center; Diversicare Healthcare Services, Inc.; Diversicare Healthcare Services, Inc.; Diversicare Management Services Co.; Advocat Finance, Inc.; Omega Healthcare Investors, Inc.; and Diversicare Leasing Company II, LLC filed a Complaint with this Court, as Plaintiffs, alleging federal subject matter jurisdiction by virtue of diversity and asking this Court to find the arbitration agreement to be valid and enforceable, to compel Defendant to arbitrate the state court claims, and to enter an order enjoining the Defendant from pursuing her claims in state court.

Subsequently, Carter Nursing and Rehabilitation, LLC [1] filed a Motion to Intervene in this matter, which was granted by Order entered on March 22, 2022 (Doc. # 21). Echoing the original Complaint, in its Complaint, Carter Nursing and Rehabilitation, LLC, asks this Court to compel Defendant to arbitrate the state court claims, and to enter an order enjoining the Defendant from pursuing her claims in state court.

Plaintiffs and Intervening Plaintiff seek entry of an Order compelling Defendant to proceed to arbitration and, in addition, enjoining her from pursing her claims in state court.

Defendant seeks a dismissal of all claims alleged herein. She contends that Mr. Eden did not execute the arbitration agreement and, as such, did not agree to arbitration. In the alternative, she argues that this Court lacks subject-matter jurisdiction and that the Court should abstain from proceeding in this matter and should not exercise its power to enjoin her from continuing the prosecution of the state court action.

### III.     ANALYSIS

Under section 4 of the Federal Arbitration Act ("FAA"), the parties to a written agreement to arbitrate can petition the district court to compel arbitration. 9 U.S.C. § 4. When presented with such a petition, the district court "must make a number of threshold determinations." *Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005).

> [F]irst, [the court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and

---

[1] Effective August 30, 2019, Plaintiff, Diversicare Leasing Corp., assigned certain future rights in the Arbitration Agreement, among other agreements, to Intervening Plaintiff, Carter Nursing and Rehabilitation, LLC, who assumed those certain rights, among others, in connection with a transaction whereby Intervening Plaintiff, Carter Nursing and Rehabilitation, LLC, became the licensed operator of Carter Nursing and Rehabilitation, f/k/a Carter Nursing and Rehabilitation Center, a skilled nursing facility located at 250 McDavid Blvd., Grayson, Carter County, Kentucky, where Mark Allen Eden was then and remained a resident until December 2019.

> fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Id.* (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). The current dispute is centered only on the first prong of this analysis, that is, whether the parties agreed to arbitrate.

Arbitration agreements are contracts. As such, courts must "review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright v. American General*, 507 F.3d 967, 972 (6th Cir. 2007).

In Kentucky, the party seeking to enforce an arbitration agreement must make *prima facie* showing that the agreement exists. *Davis v. Glob. Client Sols., LLC*, 765 F. Supp. 2d 937, 940 (W.D. Ky. 2011) (quoting *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004) (internal quotation marks omitted)). This burden can be met "by providing copies of a written and signed agreement to arbitrate." *MHC Kenworth-Knoxville/Nashville v. M & H Trucking, LLC*, 392 S.W.3d 903, 906 (Ky. 2013) (quoting *Louisville Peterbilt*, 132 S.W.3d at 857).

In their motion to compel arbitration, Plaintiffs presume the existence of an agreement to arbitrate. They conclusively allege that the subject agreement was signed and binding. However, as Defendant points out in her dispositive motion, the agreement was not fully executed. Mr. Eden did not affix his signature below the contract language that he "consents to the terms" of the agreement. The signature line is blank. As such, he did not agree to be bound by the terms of the agreement.

6

In Kentucky, a contract requires the parties to agree to be bound by the contract for it to be enforceable. *See David Roth's Sons, Inc. v. Wright & Taylor, Inc.*, 343 S.W.2d 389, 391 (Ky. 1961).  The absence of Mr. Eden's signature below the consent language is contrary to Plaintiffs' assertion that he agreed to arbitrate.

Why Mr. Eden did not sign this portion of the document is not for this Court to speculate. "'[I]n the absence of ambiguity a written instrument will be enforced strictly according to its terms,' and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105–06 (Ky. 2003); *see also Journey Acquisition-II, L.P. v. EQT Production C*o., 39 F. Supp. 3d 877 (E.D. Ky. 2014). If there is no ambiguity, the court's analysis extends only to the four corners of the to determine the parties' intention. *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000).  Unfortunately for Plaintiffs, the "four corners" of the subject agreement are devoid of Mr. Eden's consent.

Plaintiffs appear to suggest that the lack of the second signature makes no difference.  The Court disagrees.  Where one signs a contract matters.  In *Caldwell v. SSC Lebanon Operating Co.* 2016 WL 3905670 (M.D. Tenn. 2016), a nursing home employee signed "the signature block provided for 'Facility Witness #1' ...." *Id.* at *3. However, the signature block for "Facility Agent" remained blank. *Id.* The nursing home defendants argued that the representative's signature as a witness "manifests the Nursing Home's intent to enter into the agreement." *Id.* at *3. The court concluded differently. *Id.* The court ruled that the signature meant that the employee signed the agreement as a witness, not as a Facility Agent and "that the evidence in the record does not support a conclusion that the agreement was signed by or on behalf of the Nursing

7

Home." *Id.* Without the signature of a facility agent, the court found no assent and, therefore, denied the motion to compel arbitration. *Id*.

This case presents the mirror image of *Caldwell*. However, rather than the absence of the facility representative's signature, here, the resident's signature is missing. The ramification of the missing signature is the same. A contract requires a meeting of the minds. One mind, alone, is not enough. Both parties must agree.

In an effort to salvage their case, Plaintiffs submitted a Supplemental Affidavit, sworn to by Ms. Stephens on February 7, 2022, the same day that Plaintiffs filed their response in opposition to Defendant's Motion to Dismiss (Doc. # 13-1). In this second affidavit, Ms. Stephens states that after she explained the effect of the arbitration agreement to Mr. Eden, he said "sounds fine to me." *Id.* at ¶ 6. This statement falls far short of sufficient proof that an agreement to arbitrate existed between the parties. The court's analysis of a motion to compel arbitration is similar to that of a motion for summary judgment. *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). The court views all facts and inferences in the light most favorable to the nonmoving party, here, the party opposing arbitration. *Id.* Plaintiffs "bear the ultimate burden of establishing the existence of a valid agreement to arbitrate," and must present "some evidence" that the parties agreed to arbitrate. *Id.* Ms. Stephens second affidavit is, at best, self-serving and it is well established that "[s]elf-serving affidavits alone are not enough to create an issue of fact sufficient to survive summary judgement." *Capital Telecom Holdings, II LLC v. Grove City, Ohio*, 403 F.Supp.3d 643, 649 (internal citation omitted). Ms. Stephens subsequent, supplemental recollection is not enough with which to clear the evidentiary hurdle.

The parties devote much of their briefing as to whether an arbitration agreement must be in writing. Judge Amul Thapar recently clarified this issue in *Greenhouse Holdings LLC v. International Union of Painters*, 2022 WL 3148210 (6th Cir. August 8, 2022). "[A]n agreement to arbitrate need not be in writing." *Id.* at *2. Judge Thapar went on to explain that in the absence of a writing, or a signature, a party may be bound by an arbitration clause if their subsequent conduct indicates it assumed the obligation to arbitrate. *Id.* at *3 (internal citations omitted). In this case, the only "subsequent conduct" is directly contradictory to and irreconcilable with an agreement to arbitrate. Defendant filed her claim in Carter Circuit Court, not with an arbitrator.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted. Under that rule, a court is called to assess whether the plaintiff has "state[d] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The crux of both the Complaint and the Intervening Complaint is the existence of an agreement to arbitrate. Having found that one does not exist, neither the Complaint nor Intervening Complaint state a plausible claim. Therefore, FRCP 12(b)(6) requires dismissal of this civil action.

### IV.   CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** as follows:

(1)   Plaintiffs' Motion to Compel Arbitration and to Enjoin Defendant (Doc. # 6 is **DENIED**;

(2)   Defendant's Motions to Dismiss (Doc. # 10 and 23) are **GRANTED**; and

(3)     This matter is hereby **DISMISSED WITH PREJUDICE** and **STRICKEN** from the active docket of the Court.

This 31st day of August 2022.



L:\DATA\ORDERS\Ashland Civil\2021\21-87MOO re arbitration.docx